UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ALLSTATE INSURANCE COMPANY,
ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY, ALLSTATE
INDEMNITY COMPANY, and ALLSTATE          REPORT AND
FIRE & CASUALTY INSURANCE                RECOMMENDATION
COMPANY,                                 24 CV 6214 (CBA)(RML)

        Plaintiffs,

    -against-

MACCABI PHARMACY RX INC., et al.,

        Defendants.
--------------------------------------------------------X

LEVY, United States Magistrate Judge:

By order dated May 27, 2025, the Honorable Carol Bagley Amon, United States

District Judge, referred plaintiffs' motion for default judgment to me for report and

recommendation.  For the reasons stated below, I respectfully recommend that the motion be

granted in part and denied in part.

## BACKGROUND

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire

& Casualty Insurance Company, and Allstate Property & Casualty Insurance Company

(collectively, "Allstate" or "plaintiffs") filed this case on September 5, 2024, asserting claims

against nineteen defendants for insurance fraud under the United States Racketeer Influenced and

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., and for fraud and unjust

enrichment under New York State common law.  (See generally Complaint, dated Sept. 5, 2024

("Compl."), Dkt. No. 1.)  In addition to damages, the complaint seeks a declaration under 28

U.S.C. § 2201 that Allstate has no legal obligation to reimburse defendants Albertson Pharmacy

Inc. ("Albertson"), Boulevard 9229 LLC ("Boulevard"), IVS Pharmacy Corp. ("IVS"), LPM Pharmacy Corp. ("LPM"), Malvina Drug Corp. ("Malvina"), and Merrick Wellness Inc. ("Merrick") (collectively, the "pharmacy defendants")[1] in connection with pending or unpaid no-fault benefit claims, because they were allegedly part of a criminal scheme devised and executed by defendants Peter Khaim ("Khaim") and Arkadiy Khaimov ("Khaimov") to bill Allstate for medically unnecessary topical pain drugs.  (Id. ¶¶ 1, 2)

Allstate now moves for default judgment against defendants Albertson, Boulevard, IVS, LPM, Malvina, Merrick, Khaim, Khaimov, Arkadiy Abramov ("Abramov"), Luisa Pulido Molina ("Molina"), Abdugani Nabiev ("Nabiev"), Rahbar Nabieva ("Nabieva"), and Ishbay Shukurov ("Shukurov") (collectively, the "defaulting defendants").  (Plaintiffs' Motion for Default Judgment, dated Apr. 22, 2025, Dkt. No. 64.)  The defaulting defendants have failed to answer or appear in this action, despite having been properly served, and plaintiffs have obtained Clerk's Certificates of Default with respect to them.  (See Affirmations of Service, dated Sept. 9, 2024, Sept. 24, 2024, Sept. 25, 2024, Sept. 26, 2024, Sept. 27, 2024, Oct. 1, 2024, and Oct. 21, 2024, Dkt. Nos. 8, 10-13, 16, 17, 19, 20, 22, 23, 25, 26; Clerk's Certificates of Default, dated Nov. 21, 2024, Dkt. Nos. 44-56.)

As described in more detail below, plaintiffs allege that the pharmacy defendants, which were secretly owned by Khaim and Khaimov, were ineligible to request and receive payments for "basic economic loss" under New York's Comprehensive Motor Vehicle Insurance

---

[1]  The complaint also named as pharmacy defendants Maccabi Pharmacy Rx Inc. ("Maccabi") and Sterling Drugstore Inc. ("Sterling"), both of which have been dismissed from this case.  (See Notice of Voluntary Dismissal, dated Dec. 12, 2024, Dkt. No. 57; Notice of Voluntary Dismissal, dated Feb. 7, 2025, Dkt. No. 60.)  Although plaintiffs resolved their declaratory judgment claims against Maccabi and Sterling, they still seek relief from defendants Peter Khaim and Arkadiy Khaimov for the damages caused by the Maccabi and Sterling RICO enterprises (Counts I-II and XV-XVI).  (Plaintiff's Memorandum of Law, dated Apr. 22, 2025, Dkt. No. 64-1, at 2 n.2.)

Reparations Act, N.Y. INS. L. § 5101, *et seq.*, and the regulations promulgated pursuant to it, 11 N.Y.C.R.R. § 65, *et seq.* (collectively, the "no-fault laws").  (Compl. ¶¶ 5, 16, 50, 61, 72, 83, 94, 105, 233.)  Nonetheless, the defaulting defendants, acting through the pharmacy defendants, allegedly submitted fraudulent no-fault insurance claims to Allstate for medications that were (1) not medically necessary and were completely unjustified as a means of treating the purported injuries of Allstate claimants involved in automobile accidents, (2) ordered because of fraudulent predetermined treatment and prescription protocols, (3) not actually prescribed or delivered as represented in certain instances, (4) ordered using illegal pre-printed (non-electronic) forms, (5) charged at grossly excessive rates, (6) prescribed because of unlawful financial relationships with the prescribing providers, (7) filled exclusively by one or more of the pharmacy defendants, and (8) supported by documents that falsely represented or omitted material facts concerning the pharmacy defendants' eligibility for no-fault payments.  (See id. ¶¶ 6, 9, 12-14, 48-49, 59-60, 70-71, 81-82, 92-93, 103-104.)  Plaintiffs allege that the defaulting defendants participated in the operation and management of the pharmacy defendants and were connected by, *inter alia*, operating in properties controlled by Khaim and Khaimov or their relatives and close associates; employing the same supervising pharmacist, pharmacy personnel and employees; billing for the same drugs; dispensing drugs to the same patients and customers; and using the same billing and collection company (defendant NY Collections Services, Inc. owned by Khaim's spouse, defendant Oksana Poltilova[2]).  (See id. ¶¶ 2, 33-34, 234-238, 242, 247-250, 267-275, 276-279.)

The scheme, as described in the complaint, involved the pharmacy defendants billing Allstate for prescriptions that were issued by providers and clinics with ties to criminal

---

[2]  Both of these defendants have been dismissed from this case.  (See Notice of Voluntary Dismissal, dated Feb. 7, 2025, Dkt. No. 61.)

activity.  (See id. ¶¶ 14, 256.)  One such clinic, at 1767 Southern Boulevard in the Bronx, New York (the "Southern Boulevard Clinic")—unlawfully opened, owned, and maintained by Khaim and others—was a major source of the prescriptions involved in the pharmacy defendants' no-fault claims.  Providers working at the Southern Boulevard Clinic were allegedly required to issue prescriptions for all patients according to a predetermined protocol and to use prohibited pre-printed prescription forms, which were altered to include medications not actually prescribed to the patient.  (Id. ¶¶ 257-258, 262.)  Other sources of the prescriptions billed by the pharmacy defendants during the course of the scheme were non-party Metro Pain Specialists, P.C. and its successor, non-party Tri-borough NY Medical Practice, P.C.; Michael Alleyne, M.D.; and Jean-Pierre Georges Barakat, M.D.  (Id. ¶¶ 10, 263-264.)  These prescribers allegedly wrote prescriptions for a predetermined set of drugs and medications, which included topical gels, ointments, creams, topical pain patches, and NSAIDs, regardless of whether the patients needed or wanted them, ensuring these drugs and medications were prescribed in all cases.  (See id. ¶ 280.)  The scheme focused on maximizing the pharmacy defendants' profits by billing for unnecessary prescriptions for expensive topical pain products (including lidocaine 5% ointment, lidocaine patches, MedEx patches, and diclofenac sodium gel) that have no documented scientific or clinical efficacy for the underlying injuries being treated, were not clinically indicated as necessary, and are much more expensive than substantially similar over-the-counter products.  (Id. ¶¶ 276-283, 294-297, 299-320.)

## DISCUSSION

### A.  Default Judgment Standard

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment.  First, "[w]hen a party against whom a judgment for affirmative

4

relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here.  FED. R. CIV. P. 55(a). Second, after a default has been entered against the defendants and the defendants fail to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment.  FED. R. CIV. P. 55(b)(2).  To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit.  Here, as explained above, plaintiff has demonstrated that all defendants were properly served with the summons and complaint.  Plaintiff has also demonstrated that the defaulting defendants were served with the Motion for Default Judgment and accompanying submissions in compliance with Local Civil Rule 55.2(c).[3]  (See Affidavits of Service of Michael W. Whitcher, Esq., dated May 27, 2025, Dkt. Nos. 66-75.)

A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  However, an entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law."  Trs. of the Plumbers Loc. Union No. 1 Welfare Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted).  Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon

---

[3]  In addition, Allstate has complied with Local Civil Rules 7.1 and 55.2 by filing a notice of motion, a memorandum of law, a proposed default judgment order, and a declaration that the individual defaulting defendants are not infants, in the military, or incompetent persons.  (See Declaration of Michael Flaherty, sworn to Apr. 11, 2025, Dkt. No. 64-2, ¶¶ 23, 24, Exs. 17-23.)

Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court must then "determine whether [the plaintiff's] allegations establish [the defendants'] liability as a matter of law."  Id.

### B.  Liability

#### 1.  Allegations Regarding Violations of New York's No-Fault Law

New York's no-fault law requires no-fault insurers, such as Allstate, to reimburse patients for up to $50,000 in personal injury benefits without regard to fault.  N.Y. INS. L. §§ 5102, 5103.  Under the statute, automobile insurers must provide coverage for "basic economic loss," including medical expenses, arising out of the use or operation of a covered motor vehicle. See N.Y. INS. L. §§ 5102, 5103; State Farm Mut. Auto. Ins. Co. v. Mallela, 372 F.3d 500, 502 (2d Cir. 2004).  Insured patients may assign claims for benefits to their healthcare provider to submit requests for payment directly to the insurance company.  11 N.Y.C.R.R. § 65-3.11(a).  To qualify for reimbursement payments under the no-fault law, a healthcare provider must comply with all applicable licensing requirements for performing covered services.  Id. § 65-3.16(a)(12); see also N.Y. EDUC. L. § 6808(2)(e) (describing requirements for pharmacy owners and supervising pharmacists).

Because New York's no-fault laws only allow coverage for necessary medical services (see N.Y. INS. L. § 5102(a)(1); 11 N.Y.C.R.R. § 65-1.1), a provider can be held liable for submitting no-fault claims containing false and misleading information about the necessity of a service or concealing the fact that a billed-for service involved an illegal referral or financial arrangement.  See Gov't Emps. Ins. Co. v. Advanced Comprehensive Lab., LLC, No. 20 CV 2391, 2020 WL 7042648, at *7 (E.D.N.Y. Dec. 1, 2020) ("New York law provides that defendants may be held liable for medically unnecessary services under New York's No-Fault insurance laws.") (citing Long Is. Radiology v. Allstate Ins. Co., 830 N.Y.S.2d 192, 194 (2d

Dep't 2007)); Gov't Emps. Ins. Co. v. Jacques, No. 14 CV 5299, 2017 WL 9487191, at *7 (E.D.N.Y. Feb. 13, 2017), report and recommendation adopted, 2017 WL 1214460 (E.D.N.Y. Mar. 31, 2017) (finding allegations of "illegal referral arrangements" sufficient to establish fraudulent no-fault claims); HKP Physical Therapy, P.C. v. Gov't Emps. Ins. Co., 115 N.Y.S.3d 836, 850 (N.Y. Cnty. Ct. 2019) (stating that violations of New York's licensing provisions render pharmacies "ineligible for benefits"). In addition, New York Law prohibits the dispensing of drugs unless the pharmacy and pharmacist are licensed and registered. See N.Y. EDUC. L. § 6808(2)(e). Thus, concealing or misrepresenting information about the true ownership of a pharmacy constitutes a material misrepresentation that violates the law. See State Farm Mut. Auto. Ins. Co. v. Mallela, 827 N.E.2d 758, 760 (N.Y. 2005). Pharmacies are not eligible to collect no-fault payments if they fail to meet any applicable New York State or local licensing requirements. See 11 N.Y.C.R.R. § 65-3.16(a)(12); (Compl. ¶ 181; Declaration of Michael Flaherty, sworn to Apr. 11, 2025 ("Flaherty Decl."), Dkt. No. 64-2, ¶ 31).

According to plaintiffs' allegations, which are accepted as true for purposes of this motion, Khaim and Khaimov secretly owned and controlled the pharmacy defendants and concealed their involvement in the criminal scheme to exploit New York's no-fault laws by installing defendants Abramov, Davidov, Molina, Nabiev, Nabieva, and Mushyakov[4] as the nominal owners of the pharmacies. (Compl. ¶¶ 1-3, 244-245.) Khaim and Khaimov then used the pharmacy defendants as vehicles to bill Allstate for unnecessary and fraudulent no-fault insurance claims for topical pain prescriptions. (See id. ¶¶ 2, 6, 244-246.) The complaint alleges that Khaim and Khaimov paid licensed pharmacists to act as the pharmacy defendants'

---

[4] Defendants Vyacheslav Mushyakov and Yuriy Davidov have been dismissed from this action. (See Notice of Voluntary Dismissal, dated Dec. 12, 2024, Dkt. No. 57; Notice of Voluntary Dismissal, dated Feb. 7, 2025, Dkt. No. 60.)

supervising pharmacists even though they never actually supervised—or even worked at—the pharmacies. (Id. ¶ 246; Flaherty Decl. ¶¶ 41-43.) And several of the pharmacy defendants (Boulevard, IVS, and Malvina) were false fronts, without any public presence or regular pharmacy business at all. (Compl. ¶¶ 237-238.) To further this scheme, the defaulting defendants submitted fraudulent documents to the New York State Board of Pharmacy that falsely represented the owners and supervising pharmacists of the pharmacy defendants, including pharmacy registration applications that contained these misrepresentations. (Id. ¶¶ 32, 43, 54, 65, 76, 87, 98, 136, 144, 148, 152, 160.) They also caused the pharmacy defendants to submit no-fault claims for drugs that they knew were unnecessary; ordered because of predetermined protocols and unlawful referrals; charged at grossly excessive rates; and dispensed without supervision and counseling in violation of New York law. (Id. ¶¶ 353-422.)

Khaim and Khaimov allegedly controlled the pharmacy defendants in several ways. For example, they operated the pharmacy defendants from properties controlled by family members and took control of the pharmacy defendants' bank accounts and post office boxes. (See id. ¶¶ 235-236, 245, 250, 261; Flaherty Decl. ¶¶ 41-43, 45-46.) The pharmacy defendants also engaged Khaim's spouse and her billing and collection company to aggressively pursue unpaid no-fault claims. (Compl. ¶¶ 2, 248-249; Flaherty Decl. ¶¶ 41, 44.) Khaim also used his control over no-fault clinics to force the use of predetermined prescription protocols, and to facilitate unlawful referral arrangements between the pharmacy defendants and the prescribing providers. (Compl. ¶¶ 9, 49, 60, 71, 82, 93, 104; Flaherty Decl. ¶¶ 57-63.)

In 2020, Khaim and Khaimov were indicted on federal criminal charges for operating a multimillion-dollar fraud scheme through the pharmacy defendants. See United States v. Khaim, 20 CR 580, Dkt. No. 1 (E.D.N.Y.) (Flaherty Decl. ¶ 51.) In November 2022,

Khaim and Khaimov pleaded guilty to money laundering conspiracy charges arising from their scheme to launder the proceeds generated by the pharmacy defendants' fraudulent claims. (Minute Entries in 20 CR 580, dated Nov. 3, 2022 and Nov. 16, 2022.)  On April 3, 2024, Khaimov was sentenced to seventy-two months imprisonment to run concurrently with a fifty-one-month sentence imposed in another case.  (Minute Entry in 20 CR 580, dated Apr. 3, 2024.) On June 24, 2024, Khaim was sentenced to ninety-seven months imprisonment, with twelve months to run consecutively with a sentence imposed in another case.  (Minute Entry in 20 CR 580, dated June 24, 2024.)

### 2.  Civil RICO Claims

Plaintiffs allege that the defaulting defendants violated RICO, 18 U.S.C. § 1962(c), through participation in eight pharmacy enterprises (Counts I, III, V, VII, IX, XI, XIII, and XV).  (Compl. ¶¶ 492-508, 516-532, 540-556, 564-580, 588-604, 612-628, 636-652, and 660-676.)  To establish civil liability under RICO, a plaintiff must show a "substantive RICO violation under 18 U.S.C. § 1962," and that the plaintiff suffered damages as a result.  See Gov't Emps. Ins. Co. v. Alrof, Inc., No. 11 CV 4028, 2013 WL 9600668, at *7 (E.D.N.Y. July 19, 2013), report and recommendation adopted sub nom., Gov't Emps. Ins. Co. v. Park Slope Med. & Surgical Supply, Inc., 2013 WL 5209415 (E.D.N.Y Sept. 13, 2013) (citing UFCW Loc. 1776 v. Eli Lilly & Co., 620 F.3d 121, 131 (2d Cir. 2010)); AIU Ins. Co. v. Olmecs Med. Supply, Inc., No. 04 CV 2934, 2005 WL 3710370, at *5-6 (E.D.N.Y. Feb. 22, 2005).

"Courts have cautioned that RICO is 'an unusually potent weapon—the litigation equivalent of a thermonuclear device.'"  Rajaratnam v. Motley Rice, LLC, 449 F. Supp. 3d 45, 64 (E.D.N.Y. 2020) (quoting Halvorssen v. Simpson, No. 18 CV 2683, 2019 WL 4023561, at *3 (E.D.N.Y. Aug. 26, 2019)).  "Given the powerful incentive for plaintiffs to attempt to fit garden

variety fraud claims within the standard of civil RICO," which allows for treble damages, "courts must scrutinize civil RICO claims . . . to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud.'" Id. (internal quotation marks and citation omitted).

"For a § 1962(c) violation, the elements are: (1) the defendant; (2) through the commission of two or more predicate acts; (3) constituting a pattern; (4) of racketeering activity; (5) directly or indirectly participated; (6) in an enterprise; (7) the activities of which affected interstate commerce." Gov't Emps. Ins. Co. v. Infinity Health Prods., Ltd., No. 10 CV 5611, 2012 WL 1427796, at *7 (E.D.N.Y. Apr. 6, 2012), report and recommendation adopted, 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012) (citing AIU Ins., 2005 WL 3710370, at *6). Racketeering includes "mail fraud" as defined by 18 U.S.C. § 1341 to encompass using interstate mails for a scheme to defraud. See S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996); Allstate Ins. Co. v. Nazarov, 11 CV 6187, 2015 WL 5774459, at *12 (E.D.N.Y. Sept. 30, 2015) (citing 18 U.S.C. § 1961(1)).

To state a claim for mail fraud, "a plaintiff must allege, (1) 'the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme.'" Nazarov, 2015 WL 5774459, at *12 (quoting Gov't Emps. Ins. Co. v. Hollis Med. Care, P.C., No. 10 CV 4341, 2011 WL 5507426, at *23 (E.D.N.Y. Nov. 9, 2011)). "To properly allege the 'use of interstate mails,' the plaintiff need not allege that each defendant sent a piece of mail; rather, 'it need only be shown that [each defendant] acted with knowledge that the use of the mails will follow in the ordinary course of business, or that such use can reasonably be foreseen, even

though not actually intended.'"  Id. (quoting Abramovich v. Oliva, No. 11 CV 1755, 2012 WL 3597444, at *10 (E.D.N.Y. Aug. 20, 2012)) (further citation omitted).

The RICO statute defines an "enterprise" as "includ[ing] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  "The enterprise must also exist 'separate and apart from the pattern of activity in which it engages.'"  D. Penguin Bros. v. City Nat'l Bank, 587 F. App'x 663, 667 (2d Cir. 2014) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)); see also Allstate Ins. Co. v. Yehudian, No. 14 CV 4826, 2018 WL 1767873, at *8 (E.D.N.Y. Feb. 15, 2018) ("The alleged enterprise through which a pattern of racketeering activity is conducted must be distinct from those persons or entities who stand accused of conducting that racketeering activity.") (quotations and alteration omitted) (collecting cases), report and recommendation adopted, 2018 WL 1686106 (E.D.N.Y. Mar. 31, 2018).  This requirement is met by demonstrating that a "formal legal distinction" exists between the individual defendants and the RICO enterprise.  Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 165 (2001).  Where the alleged enterprises are corporations and the individual defendants are natural persons, the person-enterprise distinction is met.  See, e.g., Palatkevich v. Choupak, No. 12 CV 1682, 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) ("[A] *natural person* named as the defendant 'person' is inherently distinct from a corporate entity 'enterprise' for which he [or she] acts as an agent; in such a case, the distinctness requirement is met." (emphasis in original)).

The RICO statute defines a "pattern of racketeering" as "at least two acts of racketeering activity" that occur within ten years of each other.  18 U.S.C. § 1961(5).  "The predicate acts must be related, and either amount to or pose a threat of continuing criminal

activity." Nazarov, 2015 WL 5774459, at *13 (internal citations, alterations and quotations omitted). "This continuity requirement can be satisfied either by showing a closed-ended pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an open-ended pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." Id. (internal citations and quotations omitted). A closed-ended pattern generally requires that the predicate acts span at least two years. See Gov't Emps. Ins. Co. v. Scheer, No. 13 CV 4039, 2014 WL 4966150, at *7 (E.D.N.Y. Aug. 18, 2014), report and recommendation adopted, 2014 WL 4966137 (E.D.N.Y. Sept. 30, 2014) (for purposes of default judgment, finding a closed-ended pattern where the enterprise "submitted bills for reimbursement to which it was not entitled over a period exceeding two years"); Allstate Ins. Co. v. Smirnov, No. 12 CV 1246, 2013 WL 5407224, at *8 (E.D.N.Y. Aug. 21, 2013) (finding RICO liability where the defendants submitted bills for reimbursement to which they were not entitled over periods exceeding two years).

Allstate's complaint alleges that the pharmacy defendants are corporations and limited liability companies organized under New York law and that all are enterprises that affect interstate commerce. (See Compl. ¶¶ 40, 42, 51, 53, 62, 64, 73, 75, 84, 86, 95, 97.) The complaint divides the defaulting defendants into eight distinct enterprises: (1) Counts I-II describe the Maccabi Pharmacy Rx Inc. enterprise, conducted by Khaim and Khaimov; (2) Counts III-IV describe the Albertson Pharmacy Inc. enterprise, conducted by Abramov, Khaim, and Khaimov; (3) Counts V-VI describe the Boulevard 9229 LLC enterprise, conducted by Shukurov, Khaim, and Khaimov; (4) Counts VII-VIII describe the IVS Pharmacy Inc. enterprise, conducted by Nabieva, Khaim, and Khaimov; (5) Counts IX-X describe the LPM Pharmacy Inc.

12

enterprise, conducted by Molina, Khaim, and Khaimov; (6) Counts XI-XII describe the Malvina Drug Corp. enterprise, conducted by Nabieva, Khaim, and Khaimov; (7) Counts XIII-XIV describe the Merrick Wellness Inc. enterprise, conducted by Nabiev, Khaim, and Khaimov; and (8) Counts XV-XVI describe the Sterling Drugstore Inc. enterprise, conducted by Khaim and Khaimov.  Plaintiffs' allegations are sufficient to satisfy RICO's enterprise requirement.  See 18 U.S.C. § 1961(4); First Cap. Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004) ("[A]ny legal entity may qualify as a RICO enterprise."); see also Allstate Ins. Co. v. Abramov, No. 16 CV 1465, 2020 WL 1172697, at *6 (E.D.N.Y. Feb. 21, 2020), report and recommendation adopted, 2020 WL 1166498 (E.D.N.Y. Mar. 11, 2020); Yehudian, 2018 WL 1767873, at *8; Allstate Ins. Co. v. Afanasyev, No. 12 CV 2423, 2016 WL 1156769, at *8 (E.D.N.Y. Feb. 11, 2016), report and recommendation adopted, 2016 WL 1189284 (E.D.N.Y. Mar. 18, 2016); Gov't Emps. Ins. Co. v. Gateva, No. 12 CV 4236, 2014 WL 1330846, at *7-8 (E.D.N.Y. Mar. 30, 2014) (citing Hollis Med. Care, 2011 WL 5507426, at *4), as amended, 2014 WL 1843291 (E.D.N.Y. May 8, 2014); Gov't Emps. Ins. Co. v. Damien, No. 10 CV 5409, 2011 WL 5976071, at *6 (E.D.N.Y. Nov. 3, 2011), report and recommendation adopted, 2011 WL 6000571 (E.D.N.Y. Nov. 29, 2011).

Plaintiffs also allege sufficient facts, taken as true in the context of a default, for the court to find that each of the defaulting defendants engaged in two or more acts that constitute a "pattern" of mail fraud.  According to plaintiffs, the defaulting defendants participated in a large-scale scheme repeatedly using the U.S. Mail to submit fraudulent claims containing charges for medications that were medically unnecessary between at least 2018 and 2024.  (Compl. ¶¶ 43-46, 54-58, 65-68, 76-79, 87-91, 98-101, 120-122, 126-128, 136-137, 144-145, 148-149, 152-153, 156-157, 160-161; Flaherty Decl., Exs. 1-16.)

Plaintiffs have sufficiently alleged that Khaim and Khaimov's schemes constituted mail fraud under the statute and have established the roles played by Khaim, Khaimov, Abramov, Molina, Nabiev, Nabieva, and Shukurov in repeatedly transmitting the pharmacy defendants' claims through the U.S. Mail.  (Compl. ¶¶ 18, 423-425; Flaherty Decl. ¶ 4, Exs. 9-16.)  See Afanasyev, 2016 WL 1156769, at *9 (finding RICO liability where the plaintiffs alleged that the defaulting defendants had mailed "fraudulent and fictitious insurance claims in the process of defrauding plaintiffs over a six year period" and where plaintiffs provided "voluminous billing records" in support thereof); Gateva, 2014 WL 1330846, at *8 ("Indeed, the very basis of the . . . fraudulent scheme was th[e] submission of fraudulent bills . . . to GEICO by use of the mail") (quoting Hollis Med. Care, 2011 WL 5507426, at *8); Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C., No. 12 CV 4295, 2013 WL 5131057, at *6 (E.D.N.Y. Sept. 12, 2013) (finding defendants liable on RICO claims accusing defendants of conducting the affairs of an enterprise through a pattern of mail fraud); Alrof, 2013 WL 9600668, at *8 (defendant's conduct satisfied the elements for RICO liability where defendant owned and controlled the RICO enterprise that used the mails to send claims to the no-fault insurance company, in order to further his scheme for the reimbursement of falsified claims).

Finally, plaintiffs also allege that they suffered significant monetary damages caused by the conduct of the defaulting defendants.  See UFCW Loc. 1776, 620 F.3d at 132; Com. Cleaning Servs., LLC v. Colin Servs. Sys., Inc., 271 F.3d 374, 380 (2d Cir. 2001); Marini v. Adamo, 812 F. Supp. 2d 243, 268 (E.D.N.Y. 2011).  The allegations in the complaint establish that Khaim, Khaimov, Abramov, Molina, Nabiev, Nabieva, and Shukurov's repeated submission of fraudulent no-fault claims through the pharmacy defendants caused Allstate, reasonably

relying on those false bills and other documentation, to make payments on those claims. (Compl. ¶¶ 488-489; see also Flaherty Decl. ¶¶ 75, 80, 85, 90, 95, 100, 105, Exs. 1-8.)

I therefore respectfully recommend that the defaulting defendants be held liable for violations of RICO, 18 U.S.C. § 1962(c), for a continuing pattern of racketeering activity. See Allstate Ins. Co. v. New Century Pharmacy Inc., No. 19 CV 5702, 2021 WL 7830141, at *10 (E.D.N.Y. Aug. 13, 2021) (finding RICO liability on default where complaint specifically detailed "acts of creating and submitting fraudulent medical documentation and invoices" through the U.S. Mail, which resulted in significant damage to Allstate).

### 3. Civil RICO Conspiracy Claims

Plaintiffs also allege that the defaulting defendants violated RICO, 18 U.S.C. § 1962(d), by conducting a conspiracy to engage in an unlawful enterprise (Counts IV, VI, VIII, X, XII, XIV). (Compl. ¶¶ 509-515, 533-539, 557-563, 581-587, 605-611, 629-635, 653-659.) To establish a RICO civil conspiracy claim, the complaint must specifically allege an agreement to commit predicate acts. See Gateva, 2014 WL 1330846, at *8 (citing Morin v. Trupin, 835 F. Supp. 126, 135 (S.D.N.Y. 1993)); Allstate Ins. Co. v. Williams, No. 13 CV 2893, 2014 WL 6900121, at *8 (E.D.N.Y. Dec. 5, 2014). Plaintiffs must also sufficiently allege that the defaulting defendants "understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses." Gateva, 2014 WL 1330846, at *8 (citing Morin, 835 F. Supp. at 135) (internal quotations omitted); see Infinity Health Prods., 2012 WL 1427796, at *7. This requirement can be met by "showing that each defendant 'possessed knowledge of only the general contours of the conspiracy.'" Infinity Health Prods., 2012 WL 1427796, at *7 (quoting Hollis Med. Care, 2011 WL 5507426, at *10); see also Allstate Ins. Co. v. Valley Phys. Med., No. 05 CV 5932, 2009 WL 3245388, *7 (E.D.N.Y. Sept. 30, 2009) (finding

15

that plaintiffs adequately alleged that an insurance fraud scheme was a RICO conspiracy, and explaining that co-conspirators in a RICO conspiracy need not be fully informed about each other's specific criminal acts).

Plaintiffs allege that the defaulting defendants conspired with each other by agreeing to conduct the affairs of the pharmacy defendants through a pattern of ongoing activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, by preparing and submitting fraudulent insurance claim documents to Allstate.  (Compl. ¶¶ 535-537, 559-561, 583-585, 607-609, 631-633, 655-657, and 679-681.)  Allstate's complaint establishes that the defaulting defendants had actual knowledge of wrongdoing engaged in by and through the pharmacy enterprises.  (Id.; see also Flaherty Decl. ¶¶ 4, 74, 79, 84, 89, 94, 99, 104, 109, 113, 117, 121, 125, and 129, Exs. 9-16.)

These allegations are sufficient to meet the "relatively low [civil RICO conspiracy allegation] standard."  See Williams, 2014 WL 6900121, at *8 (quoting Hollis Med. Care, 2011 WL 5507426, at *10) (granting Allstate's motion for default judgment as to RICO conspiracy claim because allegations showed that the defendant "knew the general contours of the ongoing scheme: he had knowledge that the scheme would ultimately result in the mailing of fraudulent bills, and agreed with [co-defendant] to bill based on a predetermined fraudulent protocol that would cause the submission of fraudulent billing to Allstate."); see also Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C., No. 15 CV 3670, 2017 WL 1133282, at *14 (E.D.N.Y. Feb. 21, 2017), report and recommendation adopted, 2017 WL 1131901 (E.D.N.Y. Mar. 24, 2017) (granting motion for default judgment on RICO conspiracy claim based on allegations that defendants "agreed to conduct or participate in the conduct of the RICO enterprises' affairs through a pattern of ongoing activity consisting of repeated violations of the federal mail fraud statute . . . by

16

submitting or causing to be submitted numerous fraudulent bills seeking payment from GEICO.").  I therefore respectfully recommend that the defaulting defendants be held liable for a violation of RICO, 18 U.S.C. § 1962(d), for conducting a RICO conspiracy.

### 4.   Common Law Fraud

Allstate alleges that the defaulting defendants committed common law fraud (Count XVII).  (Compl. ¶¶ 684-692.)  A plaintiff asserting a claim of common law fraud under New York law must allege: "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) [that] such reliance caused damage to the plaintiff."  Soley v. Wasserman, 823 F. Supp. 2d 221, 235 (S.D.N.Y. 2011) (quotation marks and citation omitted). In federal court, fraud must be pleaded with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure.  AIU Ins., 2005 WL 3710370, at *14.  On the first element of fraud, plaintiffs must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Gov't Emps. Ins. Co. v. Badia, No. 13 CV 1720, 2015 WL 1258218, at *14 (E.D.N.Y. Mar. 18, 2015) (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)).

Allstate alleges that the defaulting defendants, "upon a succession of material misrepresentations of fact related to the Pharmacy Defendants' eligibility for and entitlement to No-Fault reimbursement under New York law . . . induce[d] Allstate to make payments for claims that were not legitimate or lawfully compensable."  (Compl. ¶¶ 686, 690.)  This is sufficient to find the defaulting defendants liable for common law fraud.  See Allstate Ins. Co. v. Avetisyan, No. 17 CV 4275, 2021 WL 1227625, at *5 (E.D.N.Y. Mar. 5, 2021), report and

17

recommendation adopted, 2021 WL 1224101 (E.D.N.Y. Mar. 31, 2021) (holding defendants liable for common law fraud where defendants, "through false and misleading statements, created and engaged in a fraudulent scheme that billed [Allstate] for reimbursements to which they were not eligible").

Plaintiffs have submitted lists of the allegedly fraudulent no-fault claims paid out by Allstate to each of the pharmacy defendants. (Flaherty Decl., Exs. 1-8.) The complaint alleges that all of these claims were fraudulent because they sought reimbursement for prescriptions that were not medically necessary, falsely charged for drugs with the knowledge that such drugs were not lawfully reimbursable under New York's no-fault laws, charged Allstate at grossly excessive rates, and resulted from unlawful relationships with prescribers who were induced to furnish prescriptions for medically unnecessary drugs that were to be filled exclusively by one or more of the pharmacy defendants. (See Compl. ¶ 685.) The heightened pleading standard for fraud claims requires plaintiffs to identify the allegedly fraudulent statement, the speaker, and when it was made, with particularity. See FED. R. CIV. P. 9(b). The complaint and supporting exhibits meet this standard. See, e.g., Alrof, 2013 WL 9600668, at *5 ("Plaintiffs set forth examples and described in detail how the [ ] Defendants submitted charges for items more expensive than those actually dispensed, if dispensed at all. Plaintiffs have also supplied a schedule detailing when the [ ] Defendants' claims were paid. Accordingly, Plaintiffs have pled the fraud with sufficient particularity[.]") (citations omitted); Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 373 (E.D.N.Y. 2012) ("Allstate attaches to its Complaint a series of charts that include each of the charges submitted by the defendants that it believes were fraudulent. The charts detail the entity that submitted each claim, as well as the corresponding claim number, the year Allstate paid the claim, and the amount paid by Allstate. Such

18

information clearly directs defendants to the specific misrepresentations Allstate is alleging. Under the circumstances, the specificity requirement of 9(b) requires no more[.]") (citations omitted); see also Gov't Emps. Ins. Co. v. Erlikh, No. 16 CV 7120, 2019 WL 1487576, at *6 (E.D.N.Y. Feb. 28, 2019) (allegation that the defaulting defendants, along with various providers, "intentionally made . . . false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges" was sufficient to establish liability for fraud); Allstate Ins. Co. v. Lyons, No. 11 CV 2190, 2015 WL 13735435, at *4 (E.D.N.Y. Mar. 10, 2015) ("Since the purpose of submitting these false claims was to obtain funds the defendants were not entitled to obtain, there was an unmistakable intent to have the plaintiffs rely on the false claims.").

Allstate also avers that it relied on the facially valid documents that were submitted by the defaulting defendants, and therefore, Allstate paid out at least $516,988 in claims otherwise not reimbursable under the no-fault law. (See Compl. ¶¶ 692, 697.) "These allegations, taken as true on default, satisfy the fourth and fifth elements of common law fraud by showing a reasonable reliance on [the defaulting defendants'] misrepresentations, which caused injury to [Allstate]." Avetisyan, 2021 WL 1227625, at *6 ("Given the lengths the Defaulting Defendants took to conceal the fraudulent bills . . . it was reasonable for GEICO to rely on the bills containing the purported misstatements and pay the Defaulting Defendants.") (quoting Erlikh, 2019 WL 1487576, at *7); cf. State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., No. 04 CV 5045, 2008 WL 4146190, at *13 (E.D.N.Y. Sept. 5, 2008) (finding in the RICO context that "[t]he harm here is directly quantifiable—State Farm has alleged that it was harmed when defendants mailed or caused to be mailed fraudulent claims, and State Farm paid those claims relying on the misrepresentations contained therein").

19

Allstate, therefore, has sufficiently alleged each of the elements for a claim of common law fraud, and I respectfully recommend that the defaulting defendants be held liable for common law fraud.

### 5. Unjust Enrichment

Allstate seeks a default judgment for unjust enrichment against the defaulting defendants (Count XVIII).  (Compl. ¶¶ 693-700.)  Because I recommend granting default judgment on the common law fraud claims against these parties, it is unnecessary to also grant judgment on the unjust enrichment claims.  Although Allstate addresses its belief that it meets the elements of an unjust enrichment claim (Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment, dated Apr. 22, 2025 ("Pls.' Mem."), Dkt. No. 64-1, at 20), it "do[es] not address the viability of a claim when other tort liability already exists. Properly understood, an unjust enrichment claim is intended to protect a plaintiff only in those circumstances where it has no other recourse in tort or contract." Avetisyan, 2021 WL 1227625, at *6; see also Corsello v. Verizon N.Y., Inc., 967 N.E.2d 1177, 1186 (N.Y. 2012) ("[Unjust enrichment] is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.").

Here, Allstate alleges that the defaulting defendants were unjustly enriched at Allstate's expense, but this claim is based on the same transactions as the claims for common law fraud; thus, they are duplicative.  As a result, Allstate is not entitled to default judgment on its claims for unjust enrichment.  See Hughes v. Ester C Co., 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018) ("Unjust enrichment claims should be dismissed where the violative conduct alleged is

20

conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed."); Nazarov, 2015 WL 5774459, at *16 (holding that where plaintiffs had established the defendants' liability for common law fraud, they did not adequately plead a claim for unjust enrichment "because that claim would rely on duplicative facts").  I therefore respectfully recommend denying plaintiffs' request for default judgment on their unjust enrichment claims, and that the court dismiss Count XVIII with prejudice.

      6.   Declaratory Judgment

Plaintiffs also seek a declaratory judgment relieving them from any obligation to pay the pending or unpaid fraudulent claims made by the pharmacy defendants (Counts XX-XXV).  (Compl. ¶¶ 711-770.)  A party seeking a declaratory judgment must allege that there is a "substantial controversy, between parties with adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians, 94 F.3d 747, 752 (2d Cir. 1996) (quotations and emphasis omitted).  "The controversy must be 'real and substantial' such that declaratory relief will provide 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"  Allstate Ins. Co. v. Williams, No. 13 CV 2893, 2015 WL 5560543, at *6 (E.D.N.Y. Aug. 28, 2015), report and recommendation adopted sub nom. Allstate Ins. Co. v. Dublin, 2015 WL 5560546 (E.D.N.Y. Sept. 21, 2015) (quoting E.R. Squibb & Sons, Inc. v. Lloyd's & Cos., 241 F.3d 154, 177 (2d Cir. 2001)).

"Declaratory relief is appropriate '(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.'"  Id.

21

(quoting Md. Cas. Co. v. Rosen, 445 F.2d 1012, 1014 (2d Cir. 1971)).  "A court has broad discretion to decide whether to render a declaratory judgment."  Id. (citing In re Orion Pictures Corp., 4 F.3d 1095, 1100 (2d Cir. 1993)).

I decline to recommend entry of a declaratory judgment at this time.  Allstate argues that "a controversy presently exists between Allstate on the one hand, and [the pharmacy defendants] on the other, because No-Fault claims remain pending," and the pharmacy defendants "continue to challenge Allstate's ability to deny such No-Fault reimbursement claims."  (Flaherty Decl. ¶ 160; see also Compl. ¶¶ 716, 726, 736, 746, 756, and 766.)  Although plaintiffs have provided a list of outstanding unpaid no-fault claims for each pharmacy defendant (Declaration of Michael W. Whitcher, Esq., dated Apr. 22, 2025 ("Whitcher Decl."), Dkt. No. 64-3, Exs. 3-8), they have not provided information as to whether any lawsuits or arbitrations are pending or proof of any attempt to collect by the pharmacy defendants.  If the pharmacy defendants were "in fact continuing to seek payment from Allstate, the Court would expect some evidence of such an effort, either through demand letters, [evidence of actual] arbitration[s] or similar proceedings for collections or affirmative litigation brought against Allstate."  Abramov, 2020 WL 1172697, at *16.  Aside from the conclusory claim that the pharmacy defendants "will continue" to pursue payment for unpaid claims (Flaherty Decl. ¶ 161), Allstate has not pleaded facts to show such filings have been or are being made.

"The absence of such evidence suggests that there is no actual justiciable controversy between the parties over the bills submitted by [the pharmacy defendants] to Plaintiffs, and absent such actual controversy, it would be inappropriate . . . to issue an advisory opinion on a hypothetical dispute[.]"  Id. (citing Hamburg-Sud N. Am., Inc. v. Bomix Industria de Embalagens Ltda., No. 15 CV 4774, 2017 WL 9482108, at *5 (E.D.N.Y. Nov. 3, 2017)),

22

report and recommendation adopted, 2017 WL 6606896 (E.D.N.Y. Dec. 26, 2017).  As such, I respectfully recommend that declaratory relief be denied without prejudice to renewal if plaintiffs can submit the appropriate evidence necessary for this court to find that such relief is warranted.

### B.  Damages

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations related to damages are not.  See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012); First Mercury Ins. Co. Inc. v. Schnabel Roofing of Long Island, Inc., No. 10 CV 4398, 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011).  A hearing on damages may be held but is not mandatory.  See Cement & Concrete Workers, 699 F.3d at 234.  In this case, the court need not hold a hearing because it can determine damages based on plaintiffs' submissions supported by sworn statements.

### 1.  RICO and Common Law Fraud Damages

Pursuant to 18 U.S.C. § 1964(c), an injured party is automatically entitled to recover "threefold the damages" it sustains for a RICO violation.  Indeed, "[c]ourts have found that an award of treble damages is appropriate in No-Fault billing cases involving RICO fraud claims, even in the context of a default."  Afanasyev, 2016 WL 1156769, at *12 (collecting cases).

Plaintiffs have submitted the declaration of Michael Flaherty, Special Investigations Unit Field Analyst for Allstate, documenting the amounts Allstate paid to the pharmacy defendants in connection with the fraudulent scheme described in the complaint.

23

(Flaherty Decl., ¶¶ 143-154, Exs. 1-8.)  The damages calculations submitted by Allstate are sufficient evidence on which to award RICO damages.  See, e.g., Allstate Ins. Co. v. A & F Med. P.C., No. 14 CV 6756, 2019 WL 7842516, at *6 (E.D.N.Y. Sept. 11, 2019), report and recommendation adopted, 2020 WL 132387 (E.D.N.Y. Jan. 13, 2020) (granting motion for default judgment and awarding damages based on the declaration of Allstate's Special Investigations Unit Analyst establishing the amounts paid by Allstate in connection with the defaulting defendants' claims for no-fault reimbursement for medically unnecessary and fraudulently billed medical services); Gov't Emps. Ins. Co. v. Mayard, No. 15 CV 4077, 2019 WL 3716069, at *1, *5 (E.D.N.Y. May 9, 2019), report and recommendation adopted, 2019 WL 4141030 (E.D.N.Y. Aug. 30, 2019) (granting motion for default judgment and awarding damages based on declaration of GEICO's claims manager representing payments made by GEICO for false and fraudulent claims submitted by the defendants for "medically unnecessary tests and procedures" performed pursuant to unlawful referrals); Williams, 2014 WL 6900121, at *2, *9 (awarding Allstate "damages from the defaulting defendants for claims that Allstate paid where the services were either never conducted, improperly billed by independent contractors, medically unnecessary, or exaggerated" based on declaration from Allstate Special Investigations Unit Field Analyst).  Plaintiffs also request compensatory damages from the pharmacy defendants for their common law fraud claims.  (See Flaherty Decl. ¶ 156.)  Therefore, I respectfully recommend that Allstate be awarded damages, as follows:

24

| Defaulting Defendant | Associated Enterprises | RICO Damages | Treble Damages |
|---|---|---|---|
| Peter Khaim | Maccabi, Albertson, Boulevard, IVS, LPM, Malvina, Merrick, and Sterling | $516,992.51[5] | $1,550,977.53 |
| Arkadiy Khaimov | Maccabi, Albertson, Boulevard, IVS, LPM, Malvina, Merrick, and Sterling | $516,992.51 | $1,550,977.53 |
| Arkadiy Abramov | Albertson | $112,847.58[6] | $338,542.74 |
| Ishbay Shukurov | Boulevard | $70,626.91[7] | $211,880.73 |
| Rahbar Nabieva | IVS and Malvina | $140,388.34[8] | $421,174.02 |
| Luisa Pulido Molina | LPM | $51,311.45[9] | $153,934.35 |
| Abdugani Nabiev | Merrick | $25,529.16[10] | $76,587.48 |

| Defaulting Defendant | Common Law Fraud Damages |
|---|---|
| Albertson | $112,847.58[11] |
| Boulevard | $70,626.91[12] |
| IVS | $81,594.35[13] |

---

[5] $68,855.16 (Flaherty Decl. ¶ 143, Ex. 1) + $112,847.58 (id. ¶ 144, Ex. 2) + $70,626.91 (id. ¶ 145, Ex. 3) + $81,594.35 (id. ¶ 146, Ex. 4) + $51,311.45 (id. ¶ 147, Ex. 5) + $58,793.99 (id. ¶ 148, Ex. 6) + $25,529.16 (id. ¶ 149, Ex.7) + $47,433.91 (id. ¶ 150, Ex. 8) = $516,992.51

[6] (Flaherty Decl. ¶ 144, Ex. 2.)

[7] (Flaherty Decl. ¶ 145, Ex. 3.)

[8] $81,594.35 (Flaherty Decl. ¶ 146, Ex. 4) + $58,793.99 (id. ¶ 148, Ex. 6) = $140,388.34

[9] (Flaherty Decl. ¶ 147, Ex. 5.)

[10] (Flaherty Decl. ¶ 149, Ex. 7.)

[11] (Flaherty Decl. ¶ 144, Ex. 2.)

[12] (Flaherty Decl. ¶ 145, Ex. 3.)

[13] (Flaherty Decl. ¶ 146, Ex. 4.)

25

| | |
|---|---|
| **LPM** | $51,311.45[14] |
| **Malvina** | $58,793.99[15] |
| **Merrick** | $25,529.16[16] |

### 2. Joint and Several Liability

Plaintiffs seek to hold the individual defaulting defendants jointly and severally liable as follows: (1) for Counts I-II (RICO claims concerning the Maccabi Pharmacy Rx Inc. enterprise), Khaim and Khaimov to be held jointly and severally liable in the amount of $206,565.48[17]; (2) for Counts III-IV (RICO claims concerning the Albertson Pharmacy Inc. enterprise), Abramov, Khaim, and Khaimov to be held jointly and severally liable in the amount of $338,542.74[18]; (3) for Counts V-VI (RICO claims concerning the Boulevard 9229 LLC enterprise), Shukurov, Khaim, and Khaimov to be held jointly and severally liable in the amount of $211,880.73[19]; (4) for Counts VII-VIII (RICO claims concerning the IVS Pharmacy Inc. enterprise), Nabieva, Khaim, and Khaimov to be held jointly and severally liable in the amount of $244,783.05[20]; (5) for Counts IX-X (RICO claims concerning the LPM Pharmacy Inc.

---

[14] (Flaherty Decl. ¶ 147, Ex. 5.)

[15] (Flaherty Decl. ¶ 148, Ex. 6.)

[16] (Flaherty Decl. ¶ 149, Ex. 7.)

[17] Payments to Maccabi Pharmacy Rx Inc. totaled $68,855.16. (Flaherty Decl. ¶ 143, Ex. 1.) $66,855.16 × 3 = $206,565.48.

[18] Payments to Albertson Pharmacy Inc. totaled $112,847.58. (Flaherty Decl. ¶ 144, Ex. 2.) $112,847.58 × 3 = $338,542.74.

[19] Payments to Boulevard 9229 LLC totaled $70,626.91. (Id. ¶ 145, Ex. 3.) $70,626.91× 3 = $211,880.73.

[20] Payments to IVS Pharmacy Inc. totaled $81,594.35. (Id. ¶ 146, Ex. 4.) $81,594.35 × 3 = $244,783.05.

enterprise), Molina, Khaim, and Khaimov to be held jointly and severally liable in the amount of $153,934.35[21]; (6) for Counts XI-XII (RICO claims concerning the Malvina Drug Corp. enterprise), Nabieva, Khaim, and Khaimov to be held jointly and severally liable in the amount of $176,381.97[22]; (7) for Counts XIII-XIV (RICO claims concerning the Merrick Wellness Inc. enterprise), Nabiev, Khaim, and Khaimov to be held jointly and severally liable in the amount of $76,587.48[23]; and (8) for Counts XV-XVI (RICO claims concerning the Sterling Drugstore Inc. enterprise), Khaim and Khaimov to be held jointly and severally liable in the amount of $142,301.73. [24]  (See Pls.' Mem. at 22.)[25]

Courts have routinely found joint and several liability under similar circumstances and have followed Allstate's proposed method of awarding joint and several liability in cases such as this, including against nominal owners.  See, e.g., Parkway Med. Care, P.C., 2017 WL 1133282, at *15 ("New York law provides for joint and several liability where defendants acted jointly or concurrently to produce a single injury.  Joint and several liability may also be imposed where a plaintiff demonstrates that the harm it suffered as a result of the conduct of two or more defendants is 'indivisible.'" (citations omitted)); Gov't Emps. Ins. Co. v. Elmwood Park Med.

---

[21]  Payments to LPM Pharmacy Inc. totaled $51,311.45  (Id. ¶ 147, Ex. 5.)  $51,311.45 × 3 = $153,934.35.

[22]  Payments to Malvina Drug Corp. totaled $58,793.99.  (Id. ¶ 148, Ex. 6.)  $58,793.99 × 3 = $176,381.97.

[23]  Payments to Merrick Wellness Inc. totaled $25,529.16.  (Id. ¶ 149, Ex. 7.)  $25,529.16 × 3 = $76,587.48.

[24]  Payments to Sterling Drugstore Inc. totaled $47,433.91.  (Flaherty Decl., Ex. 8.)  $47,433.91 × 3 = $142,301.73.

[25] The calculations in plaintiffs' Memorandum of Law for joint and several liability differ slightly from those in the Proposed Judgment and the Declaration of Michael Flaherty.  I have done my own calculations based on information in the exhibits to Mr. Flaherty's declaration.

Grp., P.C., No. 21 CV 617, 2022 WL 772737, at *10 (E.D.N.Y. Feb. 23, 2022), report and recommendation adopted, 2022 WL 768360 (E.D.N.Y. Mar. 14, 2022) (holding the same in similar fraud scheme); Erlikh, 2019 WL 1487576, at *8 (in a similar scheme, holding an individual defendant liable alongside the corporate defendant he had incorporated where "responsibility for the documents containing the fraudulent statements . . . cannot be allocated between the [defaulting defendants]").  I therefore recommend that damages be awarded jointly and severally as plaintiffs propose.

### 3.  Prejudgment Interest

Allstate requests an award of prejudgment interest.  Under New York law, "an award of pre-judgment interest on damages awarded for fraud is mandatory."  Mfrs. Hanover Tr. Co. v. Drysdale Sec. Corp., 801 F.2d 13, 28 (2d Cir. 1986); see also Barkley v. United Homes, LLC, 848 F. Supp. 2d 248, 269 (E.D.N.Y. 2012).  Prejudgment interest in New York accrues at the statutory rate of nine percent per year.  N.Y. C.P.L.R. § 5004.

While "[c]ourts have discretion to award prejudgment interest relating to civil RICO claims," Badia, 2015 WL 1258218, at *25, "[w]here, as here, treble damages are adequate to compensate plaintiffs, an award of prejudgment interest would generally be inappropriate." Gateva, 2014 WL 1330846, at *11 (quoting Chubb & Son Inc. v. Kelleher, No. 92 CV 4484, 2010 WL 5978913, at *8 (E.D.N.Y. Oct. 22, 2010), report and recommendation adopted, 2011 WL 839553 (E.D.N.Y. Mar. 7, 2011)); see also Nazarov, 2015 WL 5774459, at *21 ("As to Plaintiffs' RICO claims, the award of treble damages sufficiently addresses Plaintiffs' concern [about being compensated for the loss of their money], and no additional award of prejudgment interest is necessary."); Alrof, 2013 WL 9600668, at *11 ("In cases where treble damages are adequate to compensate the plaintiffs an award of prejudgment interest is inappropriate.");

28

Allstate Ins. Co. v. Kumar, No. 10 CV 8166, 2013 WL 2395748, at *4 (S.D.N.Y. June 3, 2013) ("Prejudgment interest is not necessary where trebled damages have sufficiently compensated the plaintiff and where there are no extraordinary circumstances that would otherwise warrant compelling defendants to pay interest."). I therefore recommend that prejudgment interest not be awarded on the RICO claims against defendants Khaim, Khaimov, Abramov, Molina, Nabiev, Nabieva, and Shukurov.

However, plaintiffs are entitled to an award of prejudgment interest as to the common law fraud claims against the pharmacy defendants. See Mallis v. Bankers Tr. Co., 717 F.2d 683, 694-95 (2d Cir. 1983) (finding that N.Y. C.P.L.R. § 5001 applies to claims of common law fraud and mandates an award of prejudgment interest on such claims). "Where . . . damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). Courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest." Conway v. Icabn & Co., 16 F.3d 504, 512 (2d Cir. 1994).

Plaintiffs have calculated prejudgment interest at an annual rate of nine percent from the first day of the year following each year during which it paid out fraudulent claims. (See Whitcher Decl., Ex. 9.) This methodology has been followed in this district in other no-fault insurance fraud cases awarding damages on default judgment. See, e.g., Gov't Emps. Ins. Co. v. Binns, No. 22 CV 1553, 2024 WL 1433278, at *7 (E.D.N.Y. Apr. 3, 2024); Parkway Med. Care, P.C., 2017 WL 1133282, at *18.

I find that using January 1 following the year in which Allstate incurred damages as the start date for awarding prejudgment interest on those damages is a reasonable approach. The applicable interest rates for each pharmacy defendant are set forth in the table at Exhibit 9 to the Declaration of Michael W. Whitcher, Esq. (see Whitcher Decl., Ex. 9), and I accordingly recommend that those calculations be adopted.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiffs' motion for default judgment be granted in part and denied in part, and that plaintiffs be awarded RICO damages as follows: (1) for Counts I-II, $206,565.48 from Khaim and Khaimov, jointly and severally; (2) for Counts III-IV, $338,542.74 from Abramov, Khaim, and Khaimov, jointly and severally; (3) for Counts V-VI, $211,880.73 from Shukurov, Khaim, and Khaimov, jointly and severally; (4) for Counts VII-VIII, $244,783.05 from Nabieva, Khaim, and Khaimov, jointly and severally; (5) for Counts IX-X, $153,934.35 from Molina, Khaim, and Khaimov, jointly and severally; (6) for Counts XI-XII, $176,381.97 from Nabieva, Khaim, and Khaimov, jointly and severally; (7) for Counts XIII-XIV, $76,587.48 from Nabiev, Khaim, and Khaimov, jointly and severally; and (8) for Counts XV-XVI, $142,301.73 from Khaim and Khaimov, jointly and severally.  In addition, I recommend that plaintiffs be awarded compensatory damages for common law fraud as follows: (1) $112,847.58 from Albertson Pharmacy Inc.; (2) $70,626.91 from Boulevard 9229 LLC; (3) $81,594.35 from IVS Pharmacy Corp.; (4) $51,311.45 from LPM Pharmacy Corp.; (5) $58,793.99 from Malvina Drug Corp.; and (6) $25,529.16 from Merrick Wellness Inc.  I further recommend that plaintiffs be awarded prejudgment interest at the rates set forth in Exhibit 9 to the Declaration of Michael W. Whitcher, Esq., and that plaintiffs' request for a declaratory judgment be denied.

Plaintiffs are directed to serve a copy of this report and recommendation on each defaulting defendant and file proof of such service on the docket. Any objections to this report and recommendation must be filed electronically, or filed with the Clerk of the Court, within fourteen (14) days. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72, 6(a).

Respectfully submitted,

*Robert M. Levy*

ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
March 2, 2026

31